LAW OFFICES
## COX, COX, FILO, CAMEL & WILSON, LLC

THOMAS A. FILO
MICHAEL K. COX*
PAUL J. COX
KEVIN L. CAMEL
RICHARD E. WILSON
TINA L. WILSON
SOMER G. BROWN*

ROY F. WYGANT*
JACKSON T. RITCHIE

*Also admitted in Texas

723 BROAD STREET
LAKE CHARLES, LOUISIANA 70601
www.coxcoxfilo.com

JAMES J. COX  (Of Counsel)
WILLIAM N. COX (1928-2011)

ULYSSES GENE THIBODEAUX
Retired Chief Judge
Louisiana 3rd Circuit Court of Appeal
(Of Counsel)

TELEPHONE: (337) 436-6611
FACSIMILE: (337) 436-9541

August 11, 2022

FILED   AUG 1 ? 2022

Calcasieu Parish, Louisiana

**Via Hand Delivery**
14th Judicial District Court
Clerk of Court - Calcasieu Parish
Lake Charles, LA 70601

**RE:   Todd Johnson**      2022-3637 D
**vs.**
**State Farm Fire and Casualty Company**

**HURRICANE CASE**

Dear Mr. Jones:

Please find attached the original and two copies of the Petition for Breach of Contract, Penalties and Attorneys Fees in the above referenced matter. If it requested that the original be filed, the defendants be served and the remaining copy be conformed and returned to my office.

Also enclosed is our firm's check in the amount of $551.00 to cover the costs of filing and service.

With kindest regards, I am

Sincerely,

Paul J. Cox

PJC/sm
Enclosure

AUG 1 2022
30784
COX, COX
$551.00

Filing Date: 08/11/2022 12:00 AM       Page Count: 1
C   M   S   8   1   1   8   7   8   2
Case Number: 2022-003637
Document Name: LETTER

**EXHIBIT**
B

TODD JOHNSON                                 :       14TH JUDICIAL DISTRICT COURT

VS. NO. 2022-3637 D                          :       PARISH OF CALCASIEU

STATE FARM FIRE AND
CASUALTY COMPANY                             :       STATE OF LOUISIANA

FILED: _____AUG 11 2022_____                 :       _Bratta McLaughlin_
                                                     DEPUTY CLERK OF COURT  1-Conf.

### PETITION FOR BREACH OF CONTRACT, PENALTIES AND ATTORNEYS FEES PURSUANT TO LA. R.S. § 22:1892 AND § 22:1973

**NOW INTO COURT**, through undersigned counsel, comes **Todd Johnson** (hereinafter "Plaintiff"), who respectfully represents:

1.

Plaintiff **Todd Johnson** is a natural person of the full age of majority and is domiciled in Calcasieu Parish, Louisiana.

2.

Made defendant herein is **State Farm Fire and Casualty Company**, a foreign insurance company authorized to do and doing business in Louisiana who may be served through its agent for service of process the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, Louisiana 70809

3.

Defendant insured the property of Plaintiff located at 1004 Elizabeth St., Westlake, Louisiana under Policy No. 18-BB-Y378-4, which was in full force and effect on August 27, 2020, and October 9, 2020.

4.

Hurricane Laura struck the Gulf Coast from August 26-28, 2020, making landfall around 1:00 A.M. on August 27 near Cameron, Louisiana as a strong Category 4 hurricane. Hurricane and tropical storm force winds thrashed the surrounding areas, including the location of the insured property, for several hours. Shortly thereafter on October 9, 2020, Hurricane Delta made landfall as a Category 2 hurricane with strong winds and torrential rains in the location of the insured property.

5.

The above property was damaged as a result of winds and/or wind driven rain associated with Hurricane Laura and/or Hurricane Delta.

**PROCESSED**
Date: SEP - 1 2022



Filing Date: 08/11/2022 12:00 AM
Case Number: 2022-003637          Page Count: 5
Document Name: PETITION

6.

Defendant was notified of the loss and inspected the property, at which time it had actual proof of the loss sustained at location of the property insured.

7.

Defendant sent an estimate to Plaintiff which misrepresented the extent and nature of the damage to the Plaintiff's home and underestimated the amount needed to repair the home.

8.

Plaintiff, at his own cost, engaged the services of his own adjuster to complete a thorough inspection of the damage caused by Hurricane Laura and/or Hurricane Delta and prepare an accurate, complete and correct estimate of damages to the property which showed significantly more damage than the insurer had documented.

9.

Plaintiff sent to Defendant satisfactory proof of loss which consisted of a complete and accurate estimate of damages to the insured property with supporting documents, as well as a separate satisfactory proof of loss showing additional living expenses incurred due to the hurricane.

10.

Plaintiff is entitled to all amounts owed under the policy that remain unpaid.

11.

Defendant failed to pay all amounts owed under the policy within 60 days after it first received satisfactory proof of loss.

12.

Defendant underpaid Plaintiff's claims despite receiving satisfactory proof of losses covered under the policy, and in so doing Defendant has breached its contractual obligations to timely pay the amounts owed under the policy.

13.

Louisiana Revised Statute 22:1892 obligates an insurer, such as Defendant, to make a written settlement offer and to pay the amount due any insured within 30 days after satisfactory proof of loss and states that failure to make such written settlement offer or payment subjects the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount due from the insurer to the insured, as well as reasonable attorney fees and costs.

14.

Louisiana Revised Statute 22:1973 imposes on insurers in first party claims a duty of good faith and fair dealing which includes an affirmative duty to adjust claims fairly and promptly and to make reasonable efforts to settle claims with insureds. Section 1973 makes any misrepresentation of pertinent facts a breach of that duty of good faith and fair dealing. Section 1973 also requires payment of any claim due an insured within 60 days of proof of loss. Any insurer who breaches the obligations imposed by Section 1973 is liable for damages sustained as a result of the breach as well as a penalty of up to two-times the damages sustained.

15.

Louisiana law requires that an insurer unconditionally tender the amounts due an insured in order to satisfy its payment obligations under the above-referenced statutes. More than 60 days have passed since Defendant was presented with satisfactory proof of loss and Defendant still has not made an unconditional tender of the amounts owed.

16.

In addition to the amount of the loss owed, Defendant is also liable to Plaintiff for a penalty of 50% of the amount due from Defendant, as well as reasonable attorney's fees and costs, based on Defendant's failure to make a written settlement offer and to unconditionally tender the amounts owed to Plaintiff within 30 days after receipt of satisfactory proof of loss because Defendant's failure to do so was arbitrary, capricious, or without probable cause.

17.

As a result of Defendant's failure to timely pay the amounts owed, Plaintiff has suffered and continues to suffer damages for which Defendant is liable including but not limited to increased cost of construction, replacement costs completed and incurred beyond the contractual time period, loss of use beyond the contractual time period, mental anguish, emotional distress, and inconvenience, for Defendant's misrepresentations of pertinent facts concerning the amounts owed and extent of damage, its coverages, and its insurance policy provisions, as well as for failing to unconditionally tender the amounts owed to the Plaintiff within sixty (60) days of receipt of satisfactory proof of loss, because that failure was arbitrary, capricious, or without probable cause.

18.

Twenty-three months have passed since Hurricane Laura and/or Delta damaged Plaintiff's home, and he has spent the past several months in a constant state of uncertainty and anxiety, waiting to be paid for his losses and unsure if he will ever be paid enough to fully repair his home. Plaintiff has suffered severe mental anguish because of the defendant's unwillingness or inability to timely resolve his claim.

19.

In addition to actual damages for its breaches of the statute, Defendant is additionally liable to Plaintiff for a penalty on top of the actual damages of up to two times the actual damages sustained or five thousand dollars, whichever is greater.

20.

Defendant is and continues to be in violation of both Louisiana Revised Statute 22:1892 and 22:1973 and is liable unto Plaintiff for damages, statutory penalties, attorneys' fees, interest and costs.

WHEREFORE, Plaintiff **Todd Johnson** prays that Defendant **State Farm Fire and Casualty Company** be served with the instant petition and after all due delays and legal proceedings be had, there be judgment rendered herein in favor of Plaintiff and against Defendant finding Defendant in breach of both the insurance policy and its statutory obligations and therefore liable unto Plaintiff for all amounts owed under the policy, as well as statutory penalties, such damages as are reasonable in the premises, attorneys' fees, interest and costs under Louisiana Revised Statute 22:1892 and 22:1973, and all general and equitable relief to which Plaintiff may be entitled.

Respectfully submitted,

COX, COX, FILO, CAMEL & WILSON, LLC

BY: _____

PAUL J. COX (Bar No. 23009)
723 Broad Street
Lake Charles, LA 70601
Phone: 337-436-6611
Fax: 337-436-9541
paul@coxatty.com
shannon@coxatty.com

4

**SERVICE INSTRUCTIONS:**

Please serve State Farm Fire and Casualty Company through its agent for service of process:
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

TODD JOHNSON                     :        14TH JUDICIAL DISTRICT COURT

VS. NO. 1611-3637               :        PARISH OF CALCASIEU

STATE FARM FIRE AND
CASUALTY COMPANY                :        STATE OF LOUISIANA

FILED:    AUG 1 1 2022          :        _Brette MLaughlin_
                                         DEPUTY CLERK OF COURT

### REQUEST FOR NOTICE

Now comes Todd Johnson, and pursuant to Articles 1572, 1913, and 1914 of the Louisiana

Code of Civil Procedure, requests written notice from the Clerk of Court, to be served on his

undersigned counsel of record, of any assignment of this case for trial, and of the rendition and

signing of any judgment(s) or order(s) herein, whether interlocutory or final, complete or partial.

Respectfully submitted,

**COX, COX, FILO, CAMEL & WILSON, LLC**

BY:    _____

**PAUL J. COX (Bar No. 23009)**
723 Broad Street
Lake Charles, LA 70601
Phone: 337-436-6611
Fax: 337-436-9541
paul@coxatty.com
shannon@coxatty.com

| TODD JOHNSON | : | 14TH JUDICIAL DISTRICT COURT |
| VS. NO. *1022-3637* D | : | PARISH OF CALCASIEU |
| STATE FARM FIRE AND CASUALTY COMPANY | : | STATE OF LOUISIANA |
| FILED: AUG _ 2022 | : | *Beatta McLaughlin* DEPUTY CLERK OF COURT |

## COST BOND

I am security for costs in the above numbered and entitled suit, and agree to pay costs as they accrue, according to law.

Signed this 11th day of _August_, 2022 in Lake Charles, Louisiana.

Respectfully submitted,

**COX, COX, FILO, CAMEL & WILSON, LLC**

BY: _____

**PAUL J. COX (Bar No. 23009)**
723 Broad Street
Lake Charles, LA 70601
Phone: 337-436-6611
Fax: 337-436-9541
paul@coxatty.com
shannon@coxatty.com

| | | |
|---|---|---|
| IN RE: HURRICANE LAURA | : | STATE OF LOUISIANA |
| AND | : | PARISH OF CALCASIEU |
| HURRICANE DELTA CLAIMS | : | 14TH JUDICIAL DISTRICT COURT |
| Fled:   MAR 1 0 2021 | | ~~Than + Col~~ |
| | | DEPUTY CLERK |

## INTERIM PROTECTIVE ORDER

The Initial Discovery Protocols are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. The Interim Protective Order will remain in place until the parties agree to, or the court orders, a different protective order, but absent agreement or court order, the Interim Protective Order will not apply to subsequent discovery. The parties may agree to use the Interim Protective Order throughout litigation.

IT IS HEREBY ORDERED that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Protocols:

1. Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to these Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential will be stamped "CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2. Unless the court orders otherwise, the Confidential Information disclosed will be held and may be used by any person receiving the information solely in this litigation.

3. If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the court. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

4. Information or documents designated as "Confidential" must not be disclosed to any person, except:

   a. the requesting party and counsel, including in-house or agency counsel;

   b. employees of counsel assigned to and necessary to assist in the litigation;

   c. consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

   d. any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information;

   e. The judge, the court staff, including the clerk, case manager, court reporter, or other person with access to Confidential Information by virtue of his or her position with the court, or the jury; and

     f.  The Special Master, Deputy Special Master, and any mediator involved in resolving the case, who shall all be subject to these confidentiality provisions.

5. Before disclosing or displaying Confidential Information to any person, a party must:

     a.  inform the person of the confidential nature of the information and documents; and

     b.  inform the person that the court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

6. The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form attached as Exhibit A1. If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the court.

7. The disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8. Documents or information filed with the court that is subject to confidential treatment under this Order, and any pleadings, motions, or other papers filed with the court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, rules, or court orders, and must be kept under seal until the court orders otherwise. To the extent the court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying the requirements. If possible, only the confidential parts of documents of information filed with the court will be filed under seal.

9. At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain confidential. Materials filed in the court will remain in the file unless the court orders their return.

10. Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information, under Louisiana Code of Evidence Article 502.

This Order shall not diminish the right of any party to apply to the court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information, to apply to the court for an order compelling production of documents or information, or to modify this Order. Any party may seek enforcement of this Order, and any violation of this Order may be sanctioned by the Court.

SO ORDERED on this __16__ day of ____March____, 2021, at Lake Charles, Louisiana.

_____
HON. G. MICHAEL CANADAY
Chief Judge

_____
HON. ROBERT L. WYATT
District Judge, Division D

_____
HON. DERRICK KEE
District Judge, Division F

_____
HON. CLAYTON DAVIS
District Judge, Division B

_____
HON. DAVID A. RITCHIE
District Judge, Division E

_____
HON. KENDRICK J. GUIDRY
District Judge, Division H

FILED ___MAR 1 6 2021___

_~~~ & al.

**Deputy Clerk of Court**
~~~~~~ ~~~~~~ ~~~~~~~

## EXHIBIT A1

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled _____ have been designated as confidential. I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in the documents to any other person. I further agree not to use this information for any purpose other than this litigation.

_____    DATE: _____

Signed in the presence of:


_____

(Attorney)

| IN RE: HURRICANE LAURA | : | STATE OF LOUISIANA |
| AND | : | PARISH OF CALCASIEU |
| HURRICANE DELTA CLAIMS | : | 14TH JUDICIAL DISTRICT COURT |
| DOCKET NO. _____ | | _____ |
| | | DEPUTY CLERK |

## EXHIBIT C

| DIV | DOCKET # | CAPTION |
|-----|----------|---------|
| G | 2021-000172 | DAVID BUTTROSS III vs. LIGHTHOUSE EXCALIBUR INSURANCE COMPANY |
| E | 2021-000466 | MARK DESHOTEL vs. ALLSTATE INDEMNITY COMPANY |
| D | 2021-000524 | ETHAN DAVIS vs. SCOTTSDALE INSURANCE COMPANY |
| E | 2021-000541 | CLAYTON TOERNER vs. GULF STATES INSURANCE COMPANY |
| F | 2021-000640 | TARA LOUVIER vs. MAISON INSURANCE COMPANY |
| H | 2021-000682 | RUDIE R SOILEAU JR vs. MAISON INSURANCE COMPANY |
| D | 2021-000703 | GEORGE HUTCHINSON vs. UNITED SERVICES AUTOMOBILE ASSOCIATION |
| F | 2021-000783 | KEVIN GUILLORY vs. FEDNAT INSURANCE COMPANY |
| F | 2021-000794 | MICHAEL WITTLER vs. STATE NATIONAL FIRE INSURANCE COMPANY |
| D | 2021-000797 | CARL CORMIER vs. ALLSTATE INDEMNITY COMPANY |
| B | 2021-000798 | DUSTIN STELLY vs. ALLIED TRUST INSURANCE COMPANY |
| G | 2021-000808 | THOMAS CLOPHUS vs. LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION |
| D | 2021-000822 | DARRIN FONTENNOT vs. GEOVERA SPECIALTY INSURANCE COMPANY |
| E | 2021-000965 | RICHARD DAVIS vs. MAISON INSURANCE COMPANY |

FILED__MAR 1 6 2021____

_____

Deputy Clerk of Court
Calcasieu Parish Louisiana

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

IN RE: HURRICANE LAURA      :      STATE OF LOUISIANA

AND    2021- 1045      :      PARISH OF CALCASIEU

HURRICANE DELTA CLAIMS      :      14TH JUDICIAL DISTRICT COURT

AUG -- 2 2021      DEPUTY CLERK

## SECOND AMENDED CASE MANAGEMENT ORDER
### REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANES LAURA AND DELTA

On August 27, 2020, Hurricane Laura came ashore near Cameron Parish, Louisiana and traveled through Calcasieu Parish. As a Category 4 (near 5) hurricane, it was the fifth strongest storm to ever impact the United States.[1] The United States government reports that Laura damaged over 400,000 structures, and inflicted over $19 billion in damage to western Louisiana and southeast Texas.[2] Major Hurricane-force winds, with gusts in excess of 150 mph, covered the entirety of Calcasieu Parish, and inflicted catastrophic damage throughout the entirety of this Court's jurisdiction. On October 9, 2020, a subsequent, Category 2 hurricane – Hurricane Delta – struck the same area devastated just six weeks earlier by Hurricane Laura, causing additional damage estimated at $4 billion.[3] Hurricanes Laura and Delta may sometimes hereinafter be referred to as the "Hurricanes," and the causes of action arising therefrom may sometimes be referred to as "the Hurricane Cases."[4]

In the months following Hurricanes Laura and Delta, many related lawsuits have been filed and are pending before the Court, with still many more expected to be filed. On March 16, 2021, this Court issued the First Case Management Order related to Hurricane Cases ("Original CMO"). In Act 318 of the 2020 Regular Session the Legislature of Louisiana amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[5]

---

[1] Jeff Masters, *Devastating Laura Is Tied as the Fifth-strongest Hurricane on Record to Make Landfall in the Continental U.S.*, YALE CLIMATE CONNECTIONS (Aug. 27, 2020), *available at* https://yaleclimateconnections.org/2020/08/devastating-laura-tied-as-fifth-strongest-hurricane-to-make-landfall-in-continental-u-s/
[2] https://www.climate.gov/news-features/blogs/beyond-data/2020-us-billion-dollar-weather-and-climate-disasters-historical https://www.nesdis.noaa.gov/content/us-billion-dollar-disasters-top-noaa-expert-weighs-in
[3] AON, *Global Catastrophe Recap* (Oct. 2020) at p. 4, *available at* http://thoughtleadership.aon.com/documents/20201111_analytics-if-october-global-recap.pdf
[4] All causes of action concerning damage related to Hurricanes Laura or Delta are subject to this Order, including causes of action where the third-party demand or cross claim is a claim against an insurer by an insured due to damage from the Hurricanes.
[5] Hurricanes Laura and Delta qualify pursuant to R.S. 13:4165(F)(1). A major disaster declaration was made by the President for Calcasieu Parish in Hurricane Laura under FEMA Release No. HQ-20-229 and for Hurricane Delta under FEMA Release No. HQ-20-299. Calcasieu Parish qualified for individual assistance for both Hurricanes (FEMA designation DR-4559-LA and DR-4570-LA).

,DocuSign Envelope ID: 18B22O50-3B41-49C9-B9A4-3E3EB4A482C0

Act 318 authorizes this court to amend the Original CMO, and, after consultation with and upon the recommendation of the Special Master and in consideration the high volume of cases from Calcasieu Parish in state and federal courts, this Court finds it warranted to amend the Original CMO to best accommodate the adjudication of Hurricane cases in this Court.

Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the Calcasieu Parish community to move forward with crucial recovery efforts, in the aftermath of both Hurricanes Laura and Delta, and the Coronavirus pandemic. In consideration of these aims, after due consideration of the Case Management Order protocol implemented by the United States District Court for the Western District of Louisiana concerning all Hurricane Cases, this Court issues the instant First Amended Case Management Order. **IT IS HEREBY ORDERED** that this Second Amended Case Management Order shall be immediately applicable to all Hurricane Cases and shall replace the Original CMO.

## SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCLOSURES

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by the United States District Court for the Western District of Louisiana, applicable to all Calcasieu Parish Hurricane Cases filed in federal court. The Federal Court considered the Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey.[6] These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an expedited mediation procedure.

Accordingly, this Court has adopted the Disaster Protocols attached hereto as Exhibit "A" in the Disaster Protocols Standing Order of March 16, 2021 and makes them applicable to all Hurricane Laura and Hurricane Delta cases filed in this Court.[7] Additionally, **IT IS HEREBY ORDERED** that the disclosures and exchange of information required by the Disaster Protocols Order issued March 16, 2021 shall be due 45 days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to

---

[6] *United States District Court for the Southern District of Texas*, Disaster Litigation Initial Discovery Protocols, *available at* https://www.txs.uscourts.gov/sites/txs/files/Disaster%20FINAL%20Web%20version.pdf
[7] The Standing Order Regarding Initial Discovery Protocols in Certain Property Damage Suits Arising from Hurricanes Laura and Delta together with its Exhibits entered on March 16, 2021 shall remain in force and apply to all Hurricane Cases under this First Amended CMO.

DocuSign Envelope ID: 18B22D50-3B41-49C9-B9A4-3E3EB4A482C0

as the "Disclosure Deadline". No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than 75 days from the original deadline to file responsive pleadings unless the extension is by the consent of all parties or pursuant to an express Order of this Court. **IT IS FURTHER ORDERED** that each party shall supplement their Initial Disclosures at least fifteen days prior to any scheduled mediation pursuant to the CMO. Nothing in this Section prevents other discovery in accordance with the provisions of the Code of Civil Procedure, except that requests for subpoenas for depositions shall not be submitted during the SSP without pre-approval of the Special Master or leave of the Court.

## SECTION 2. PRIVILEGE

Documents for which a privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney.[8] However, as recognized by the United States District Court for the Eastern District of New York In Re: Hurricane Sandy Cases, "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[9]

Therefore, **IT IS HEREBY ORDERED** that any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis of that the material is privileged. The log should include the author of the document, the recipient of the document, the date of the document, and the nature of the privilege asserted.

Any dispute concerning privileged items shall be resolved by contradictory motion before the assigned District Judge. The District Judge may direct that the disputed items be provided to him *in camera* prior to the hearing of the motion.

## SECTION 3. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction *infra*, the Court finds that exceptional circumstances exist which warrant the appointment of a Special

---

[8] La. C.C.P. art. 1424(A)
[9] United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-ordes/14mc41cmo01.pdf.

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*, it is ordered that **THE COURT HEREBY APPOINTS CADE R. COLE, ESQ.** as the Special Master for Hurricane Cases in the 14th Judicial District Court.

The Court takes specific notice of his role as Deputy Special Master under the Original CMO and his service as Deputy Special Master for Hurricane Cases, by the United States District Court for Western Louisiana. The Court anticipates that this appointment and continued coordination with the federal Special Master will encourage consistent resolutions of Hurricane Cases across both State and Federal Courts. As part of their appointment, the Court mandates that the Special Master shall proceed with all reasonable diligence, and shall exercise their respective rights and responsibilities to direct the Streamlined Settlement Process as provided in this Order.

<u>IT IS HEREBY FURTHER ORDERED</u> that the Neutrals, referenced in Section 4(II)(B), *supra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

### *I.    The Special Master*

The Special Master shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefing, engage in discovery, and attend settlement conferences. Nothing in this part shall prevent regular formal discovery or motions to compel to be filed with and heard by the assigned District Judge.

### *II.    Compensation of Appointed Neutrals*

The Special Master and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

A. $400 per hour for the Appointed Neutrals;

B. $250 per case for the Special Master for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals; and

C. all actual expenses of the Appointed Neutrals, including but not limited to travel, meeting rooms, telephone, and electronic audio or video conference means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Master, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defendant(s).

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

### III.    Role of Appointed Neutrals

A. The Special Master and Appointed Neutrals may communicate *ex parte* with the Court when deemed appropriate by the Special Master, at his discretion, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

B. The Special Master and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

C. The Special Master and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

D. The Special Master may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Master.

### IV.    Notice to the Special Master.

Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP for good cause shown in writing within the applicable deadline (*see* Section 4 below). **IT IS HEREBY ORDERED** that any party filing an opt out motion shall copy the Special Master, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Master, regardless whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED** that any prior opt out pursuant to the Original CMO be and is hereby vacated, and that any party that previously opted out shall have fifteen (15) days from the date of receipt of a copy of this Order (including by email to their counsel of record) to file a Motion to Opt Out detailing their good cause for why they should be allowed to opt out of the SSP. The Court may set the Motion to Opt Out for hearing or decide it in chambers.

**IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Master of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where counsel for the party has been provided a copy of this Order). The Special Master shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

## SECTION 4. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 30 days of the filing of the defendant's responsive pleading (or within 15 days of the transmittal to their counsel of a copy of this Order, including by electronic or other means – whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process for good cause shown. Unless the Court authorizes an opt out, then the parties shall participate in the two-staged Streamlined Settlement Process, which is described as follows:

### I.    First Stage: Settlement Conference

Within 30 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference among all parties and their counsel. Within 15 days of the Disclosure Deadline counsel for the plaintiff(s) and counsel for the defendant(s) shall meet to confer and discuss a mutually convenient time, date, and manner for the conference. In light of the COVID-19 pandemic as well as the desire

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms.

Counsel for each plaintiff and for each defendant must have full authority to resolve the case from their clients, who shall be readily available by telephone if circumstances for that particular settlement conference require assistance.

## II.    Second Stage: Mediation

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The parties shall provide the Special Master written notice (including by email and preferably jointly) of completion of the First Stage along with a request for mediation. The Special Master shall then assign each Hurricane Case to an Assigned Neutral from the court approved list found in Paragraph B of this Subsection, and it is the goal that Assigned Neutrals complete mediation within 90 days of appointment. The Special Master (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties.

### A.    Conduct of Mediation

After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Master the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone, if circumstances for that particular mediation require assistance.

To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Process, the attendees may each make opening statements but there shall be no live witness testimony.

### B.    List of Neutrals

The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators) for the SSP:

1) Any person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5), including: H. Ward Fontenot, Patrick J. Hron, Margaret "Peggy" Landry, John W. Perry, III, Emmett C. Sole, Elizabeth Middleton, Richard J. Hymel, or Randall K. Theunissen; and
2) Any person designated as a neutral pursuant to the United States District Court for Western Louisiana's CMO, including as amended from time to time.

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3ED4A482C0

## C. Neutral Training

The Special Master may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Master and his deputy may jointly form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Master or his deputy may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Master or his deputy may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Master or his deputy may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

## III. Extensions of Time

Upon a joint request by the parties, or for other good cause shown, the Special Master or his deputy may extend any deadline specified in this Order by up to 15 days.

## SECTION 5. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

### I. Where Parties HAVE been allowed to Opt Out of the SSP

If any party has been permitted to opt out of the SSP following a timely motion for the same, any party requesting appointment of an Umpire shall file a motion requesting same with the case's assigned District Judge, which motion shall be set for contradictory hearing.

Counsel for either or both the Insured and the Insurer may also submit a joint motion requesting appointment of an Umpire to the Civil Duty Judge, who may agree to hear the motion during their respective duty week.

### II. Where Parties Have NOT Opted Out of the SSP

In all other cases, any request for the appointment by the Court of an Umpire shall be made in writing no later than 14 days following the filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Master in the same manner as provided for a discovery dispute under the SSP, and the parties shall notify the Special Master and transmit the Umpire request to the Special Master via email at ColeFirm@colelaw.us . The deadline may be extended by the Special Master in exceptional circumstances.

### III. Umpire-Only Filing

If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures in Subsection 5(II). Any such request shall be made in writing no later than 14 days following the filing of the defendant's responsive pleading, and any such motion or request for this Court's appointment of an Umpire

· DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

shall be referred to the Special Master under the above captioned general docket created for the Hurricane Cases. The parties shall notify the Special Master and transmit the Umpire request to the Special Master via email at ColeFirm@colelaw.us. The deadline may be extended by the Special Master in exceptional circumstances.

An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

A written report and recommendation following the Umpire's appointment shall be issued to the parties, and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge following a motion filed with the assigned District Judge within seven days of transmittal of the written report.

In an Umpire Only Filing, the Special Master shall provide the report and recommendation to the parties, who will in turn provide the same to the civil Duty Judge as of the time of the issuance of the report and recommendations. Similarly, the recommendation shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the civil Duty Judge following a motion filed with the civil Duty Judge within seven days of transmittal of the written report.

**SECTION 7.**      **CLERK OF COURT AND NOTICE**

A Plaintiff filing a Hurricane Case should note on its cover letter, in _ALL CAPS_ and _RED FONT_, that the matter is a "HURRICANE CASE". Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.   If the Special Master learns the Order has not been entered by the Clerk of Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

In all subsequently filed Hurricane Cases, a copy of this order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

The Clerk of Court shall transmit via email, at least weekly, to the Special Master the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

Any party making any filing in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Master in the same manner as enrolled counsel via email at ColeFirm@colelaw.us.

**SECTION 7.        COURT SUPERVISION**

The Disaster Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. All provisions of this Order shall become effective August 1, 2021 and shall be applicable to all cases whether then pending or thereafter filed.

SO ORDERED on this _____2_____ day of _____August_____, 2021, at Lake Charles, Louisiana.

HON. G. MICHAEL CANADAY
Chief Judge

HON. ROBERT L. WYATT
District Judge, Division D

HON. DERRICK KEE
District Judge, Division F

HON. CLAYTON DAVIS
District Judge, Division B

HON. DAVID A. RITCHIE
District Judge, Division E

HON. KENDRICK J. GUIDRY
District Judge, Division H

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

FILED    AUG - 2 2021

Deputy Clerk of Court
Calcasieu Parish, Louisiana

FILED    MAR 1 0 2021

Deputy Clerk of Court
Calcasieu Parish, Louisiana

**EXHIBIT A**

## INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE CASES ARISING FROM HURRICANES LAURA AND DELTA

### PART 1: INTRODUCTION AND DEFINITIONS.

(1) Statement of purpose.

    a. These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to cases involving first-party insurance property damage claims arising from man-made or natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

    b. Participating courts may implement the Disaster Protocols by local rule or by standing, general, or individual-case orders. Although the Disaster Protocols are designed for the full range of case size and complexity, if any party believes that there is good cause why a case should be exempted, in whole or in part, from the Disaster Protocols, that party may raise the issue with the court.

    c. The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by law, code or other applicable rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

    d. Except as modified by the court, the Disaster Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every Disaster Case ("Initial Discovery"). This Initial Discovery is unlike initial disclosures under federal or state rules because it includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues requiring further litigation

(2) Definitions. The following definitions apply to cases under the Disaster Protocols.

    a. *Claimed Loss.* "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

    b. *Document.* "Document" and "documents" are defined to be synonymous in

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(1)(A) or similar state rules. A draft of a document or a nonidentical copy is a separate document.

c. *Event.* "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

d. *Identify (Documents).* When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

e. *Identify (Natural Persons).* When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f. *Identify (Non-Natural Persons or Entities).* When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g. *Insurer.* "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h. *Insured.* "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i. *Loss.* "Loss" means damage to the Property caused by the Event.

j. *Other Insurance.* "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

k. *Policy.* "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

l.  *Property.* "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

m.  *Relating to.* "Relating to" means concerning, referring, describing, evidencing, or constituting.

(3) Instructions.

   a.  The relevant time period for this Initial Discovery begins on the date immediately before the Event and ends on the date the lawsuit is filed for the Claimed Loss, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below.

   b.  This Initial Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to expressly making the claim A detailed privilege log is required as specified in the applicable Case Management Order or any subsequent orders of the Court, otherwise documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the court orders or the applicable rules require.

   c.  If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

   d.  For this Initial Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Initial Discovery is subject to obligations on supplementation and relevant requirements concerning certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery later under the rules.

   e.  This Initial Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

   f.  Within 14 days after the later of entry of this Order or the filing of a responsive

Page 3 of 8

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

pleading by the responding party, the Parties shall meet and confer on the format (e.g., searchable PDF, Excel spreadsheet) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

## PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED.

(1) Timing.
Unless the court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court), or within 20 days of the date of this Order if that date is later.

(2) Information to be produced by the Insured:

    a.  A description of the Insured's ownership or other interest in the Property.

    b.  The address of the Property (or location of movable Property) on the date of the Event.

    c.  The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

    d.  Identify any current mortgagee or other known lien holder.

    e.  A computation of each item or type of Claimed Loss, including content claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

    f.  Identify any payments received under the Policy relating to the Event. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

    g.  Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

    h.  Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

    i.  With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

DocuSign Envelope ID: 16B922D50-3B41-49C9-B9A4-3E3EB4A482C0

    j.  Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

    k.  A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

    l.  A general description of any known preexisting damage to the Property relating to the Claimed Loss.

    m.  A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.

    n.  Identify any sale, transfer, or foreclosure of the Property after the Event.

(3) Complete and unaltered copies of the following documents to be produced by the Insured:

    a.  Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of Insured.

    b.  Proofs of loss for the Claimed Loss.

    c.  Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

    d.  Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

    e.  Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

    f.  Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

    g.  The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

    h.  Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

    i.  If there has been an appraisal under the Policy, documents relating to the appraisal process.

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

j.   Any other document(s) on which the Insured relies to support the Claimed Loss.

**PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.**

(1) Timing.

(2) Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 20 days of the date of this Order if that date is later. The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.

(3) Information to be produced by the Insurer:

    a.  **If there is a dispute over coverage,** in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:

        i.   Any exclusions or exceptions, or other coverage or legal defenses;

        ii.  The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;

        iii. Whether there is also a dispute as to the value or amount of the Claimed Loss;

        iv.  Any other basis on which coverage was denied.

    b.  **If there is a dispute over all or part of the valuation,** an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:

        i.   The Insurer's understanding of the nature of the dispute;

        ii.  The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and

        iii. The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

    c.  Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

    d.  Any payments previously made under the Policy relating to the Event.

    e.  A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

    f.  Any other Event-related lawsuits filed for the Property or the Insured.

    g.  Identify the adjuster(s) who handled the claim.

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3E84A462C0

    h.  Identify the individual(s) who evaluated, recommended, made, approved, or rejected the claim decision.

    i.  Identify the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or, upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

    j.  If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(4) Complete and unaltered copies of the following documents to be produced by the Insurer:

    a.  The entire claim file maintained by the Insurer.

    b.  The complete Policy in effect at the time of the Event.

    c.  Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement. This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

    d.  Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

    e.  Any other evaluations of the Claimed Loss.

    f.  Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

    g.  Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

Insurer's claim decision.

h. The complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

i. Proofs of loss for the Claimed Loss.

j. If there has been an appraisal under the Policy, all documents relating to the appraisal process.

k. Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane Laura claims generally when the Claimed Loss relates to Laura, Hurricane Delta claims generally when the Claimed Loss relates to Delta, or to similar types of claims generally such that they would therefore be applicable to the Hurricane Cases including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

l. For non-NFIP Claims, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

m. Any other document(s) on which the Insurer relies to support its defenses.

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

| IN RE: HURRICANE LAURA | : | STATE OF LOUISIANA |
|---|---|---|
| AND | : | PARISH OF CALCASIEU |
| HURRICANE DELTA CLAIMS | : | 14TH JUDICIAL DISTRICT COURT |

**EXHIBIT "B"**
**STIPULATION FOR MEDIATION**

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned parties:

1.  The parties agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Case Management Order (and any relevant supplements).

2.  No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and except as provided by Order of the Court it shall not be revealed by the neutral unless and until the party who provided the information agrees to its disclosure.

3.  The mediation process, for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence, shall be considered a settlement negotiation. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. However, any evidence which would otherwise subject to discovery or admissible shall not be excluded from discovery or admission in evidence solely because it has been referenced or discussed during this mediation process.

4.  The appointed neutral and their agents shall enjoy the same immunity as judges and court employees, whether under federal or state law, for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

DocuSign Envelope ID: 16B22D50-3B41-49C9-B9A4-3E3EB4A482C0

5.  The parties shall not:

   (i)   Call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation;

   (ii)  Subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation; and

   (iii) Offer into evidence any statements, views or opinions of the appointed neutral.

6.  The appointed neutral's services have been made available to the parties through the dispute resolution procedures sponsored by the Court. In accordance with those procedures, the appointed neutral represents that he or she has taken requisite oaths.

7.  Any party to this Stipulation is required to attend at least one session and as may be directed by the Special Master as many other sessions thereafter as may be helpful in resolving this dispute.

8.  An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.


PLAINTIFF _____          COUNSEL FOR PLAINTIFF _____

Date: _____                      Date: _____


DEFENDANT _____          COUNSEL FOR DEFENDANT _____

Date: _____                      Date: _____

CONSENTED TO BY:


NEUTRAL APPOINTED BY THE COURT _____

Date: _____

Calcasieu Parish Clerk of Court
PO Box 1030
Lake Charles, LA 70602



14ᵗʰ Judicial District Court
State of Louisiana
Parish of Calcasieu

## NEW CIVIL FILING

TODD JOHNSON

VS.   2022-003637

STATE FARM FIRE AND CASUALTY COMPANY

Sarah Hollier
Deputy Clerk of Court



CMS New Suit

Page 1 of 1

Citation for Petition

TODD JOHNSON
VS. 2022-003637
STATE FARM FIRE AND CASUALTY
COMPANY



14ᵗʰ Judicial District Court
State of Louisiana
Parish of Calcasieu

THE STATE OF LOUISIANA
TO: STATE FARM FIRE AND
CASUALTY COMPANY
THROUGH LOUISIANA
SECRETARY OF STATE
8585 ARCHIVES AVENUE
BATON ROUGE, LA 70809

Parish of East Carroll

You are named as defendant in the above captioned matter. Attached to this citation is a:

PETITION FOR BREACH OF CONTRACT ET AL

***ALSO SERVED WITH ATTACHED CERTIFIED COPIES OF: "SECOND AMENDED
CASE MANAGEMENT ORDER REGARDING CERTAIN PROPERTY DAMAGE SUITS
ARISING FROM HURRICANES LAURA AND DELTA" and "INTERIM PROTECTIVE
ORDER".

You must either comply with the demand contained in the petition of TODD JOHNSON, or make an
appearance either by filing an answer or pleading in the 14ᵗʰ Judicial District Court located at 1000 Ryan St.,
Lake Charles, LA within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under
penalty of default.

Article 1001 of the Louisiana Code of Civil Procedure states:

A. A Defendant shall file his answer within twenty-one (21) days after service of Citation upon
him, except as otherwise provided by law.

If the plaintiff files and serves a Discovery Request with his Petition, the Defendant shall file his
answer to the petition within thirty (30) days after service of citation and service of discovery
request.

B. When an Exception is filed prior to Answer and is overruled or referred to the merits, or is
sustained and an Amendment of the Petition ordered, the Answer shall be filed within fifteen
(15) days after the exception is overruled or referred to the merits, or fifteen (15) days after
service of the Amended Petition.

C. The Court may grant additional time for answering.

Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:

A defendant shall plead in response to an Amended Petition within the time remaining for pleading
to the Original Pleading or within ten (10) days after service of the Amended Petition, whichever
period is longer, unless the time is extended under Article 1001.

THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.

Witness the Honorable Judges of said Court, at Lake Charles, Louisiana, this 11th day of August 2022.

Issued and delivered September 1, 2022.

*Becky Kaliszeski*

Becky Kaliszeski
Deputy Clerk of Court

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - SERVICE INFORMATION - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received on the _____ day of _____ 20___, and on the _____ day of _____ 20___,
served the above named party as follows:

C M S 6 1 4 3 6 9
Filing Date 09-01-2022 09:17 AM    Page Count 2
Case Number 2022-003637
Document Name: 1604-H Citation for Persons - Humeans

[ File Copy ]
CMS1624

Page 1 of 2

PERSONAL SERVICE on the party herein named _____

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile in the parish in the hands of _____, a person apparently over the age of seventeen years, living and residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his residence at the time of said service.

RETURNED:

PARISH OF _____ this _____ day of _____ 20____

SERVICE        $_____          BY: _____
                                            Deputy Sheriff
MILEAGE        $_____

TOTAL $_____

Party No.    P001

Citation for Petition

TODD JOHNSON
VS.   2022-00363
STATE FARM FIRE AND CASUALTY
COMPANY



14th Judicial District Court
State of Louisiana
Parish of Calcasieu

THE STATE OF LOUISIANA
TO:   STATE FARM FIRE AND
      CASUALTY COMPANY
      THROUGH LOUISIANA
      SECRETARY OF STATE
      8585 ARCHIVES AVENUE
      BATON ROUGE, LA 70809

Parish of East Carroll

You are named as defendant in the above captioned matter. Attached to this citation is a:

PETITION FOR BREACH OF CONTRACT ET AL

***ALSO SERVED WITH ATTACHED CERTIFIED COPIES OF: "SECOND AMENDED
CASE MANAGEMENT ORDER REGARDING CERTAIN PROPERTY DAMAGE SUITS
ARISING FROM HURRICANES LAURA AND DELTA" and "INTERIM PROTECTIVE
ORDER".

You must either comply with the demand contained in the petition of TODD JOHNSON, or make an
appearance either by filing an answer or pleading in the 14th Judicial District Court located at 1000 Ryan St.,
Lake Charles, LA within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under
penalty of default.

Article 1001 of the Louisiana Code of Civil Procedure states:
C.  A Defendant shall file his answer within twenty-one (21) days after service of Citation upon
    him, except as otherwise provided by law.

    If the plaintiff files and serves a Discovery Request with his Petition, the Defendant shall file his
    answer to the petition within thirty (30) days after service of citation and service of discovery
    request.

D.  When an Exception is filed prior to Answer and is overruled or referred to the merits, or is
    sustained and an Amendment of the Petition ordered, the Answer shall be filed within fifteen
    (15) days after the exception is overruled or referred to the merits, or fifteen (15) days after
    service of the Amended Petition.

C. The Court may grant additional time for answering.

Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:

A defendant shall plead in response to an Amended Petition within the time remaining for pleading
to the Original Pleading or within ten (10) days after service of the Amended Petition, whichever
period is longer, unless the time is extended under Article 1001.

THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.

Witness the Honorable Judges of said Court, at Lake Charles, Louisiana, this 11th day of August 2022.

Issued and delivered September 1, 2022.

*Becky Kaliszeski*

Becky Kaliszeski
Deputy Clerk of Court

------------------------------------------------------
SERVICE INFORMATION
------------------------------------------------------

Received on the _____ day of _____ 20___, and on the _____ day of _____ 20___,
served the above named party as follows:

C  M  S  6  1  4  4  3  6  9
Filing Date 09/01/2022 09:17 AM      Page Count 2
Case Number 2022-00363
Document Name: 1604-H Citation for Person - Humana

¦ Original Copy ¦
CMS1604

PERSONAL SERVICE on the party herein named _____

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile in the parish in the hands of _____, a person apparently over the age of seventeen years, living and residing in said domicile and whose name and other facts connected with this service, I learned by interrogating the said person, said party herein being absent from his residence at the time of said service.

RETURNED:

PARISH OF _____ this _____ day of _____ 20____

| | | | |
|---|---|---|---|
| SERVICE | $_____ | BY: | _____ |
| | | | Deputy Sheriff |
| MILEAGE | $_____ | | |
| TOTAL $_____ | | | |

Party No.    P001

Citation for Petition

TODD JOHNSON
VS.   2022-00363
STATE FARM FIRE AND CASUALTY
COMPANY



14th Judicial District Court
State of Louisiana
Parish of Calcasieu

THE STATE OF LOUISIANA
TO:   STATE FARM FIRE AND
      CASUALTY COMPANY
      THROUGH LOUISIANA
      SECRETARY OF STATE
      8585 ARCHIVES AVENUE
      BATON ROUGE, LA 70809

Parish of East Carroll

You are named as defendant in the above captioned matter. Attached to this citation is a:

PETITION FOR BREACH OF CONTRACT ET AL

***ALSO SERVED WITH ATTACHED CERTIFIED COPIES OF: "SECOND AMENDED
CASE MANAGEMENT ORDER REGARDING CERTAIN PROPERTY DAMAGE SUITS
ARISING FROM HURRICANES LAURA AND DELTA" and "INTERIM PROTECTIVE
ORDER".

You must either comply with the demand contained in the petition of TODD JOHNSON, or make an
appearance either by filing an answer or pleading in the 14th Judicial District Court located at 1000 Ryan St.,
Lake Charles, LA within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under
penalty of default.

Article 1001 of the Louisiana Code of Civil Procedure states:
E.  A Defendant shall file his answer within twenty-one (21) days after service of Citation upon
    him, except as otherwise provided by law.

    If the plaintiff files and serves a Discovery Request with his Petition, the Defendant shall file his
    answer to the petition within thirty (30) days after service of citation and service of discovery
    request.

F.  When an Exception is filed prior to Answer and is overruled or referred to the merits, or is
    sustained and an Amendment of the Petition ordered, the Answer shall be filed within fifteen
    (15) days after the exception is overruled or referred to the merits, or fifteen (15) days after
    service of the Amended Petition.

C.  The Court may grant additional time for answering.

Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:

A defendant shall plead in response to an Amended Petition within the time remaining for pleading
to the Original Pleading or within ten (10) days after service of the Amended Petition, whichever
period is longer, unless the time is extended under Article 1001.

THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.

Witness the Honorable Judges of said Court, at Lake Charles, Louisiana, this 11th day of August 2022.

Issued and delivered September 1, 2022.

*Becky Kaliszeski*

Becky Kaliszeski
Deputy Clerk of Court

-------------------------------------------------------------------

SERVICE INFORMATION

Received on the _____ day of _____ 20___, and on the _____ day of _____ 20___,
served the above named party as follows:

Filing Date: 09/01/2022 09:17 AM     Page Count: 2
Case Number: 2022-00363
Document Name: 1604-H Citation for Person - Humans

[ Service Copy ]
CMS1604

Page 1 of 2

PERSONAL SERVICE on the party herein named _____

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile
in the parish in the hands of _____, a person apparently over the age of seventeen years,
living and residing in said domicile and whose name and other facts connected with this service, I learned by
interrogating the said person, said party herein being absent from his residence at the time of said service.
RETURNED:
PARISH OF _____ this _____ day of _____ 20____

SERVICE        $_____              BY:    _____
                                                       Deputy Sheriff
MILEAGE       $_____

TOTAL $_____

Party No.    P001

Citation for Petition

TODD JOHNSON
VS.   2022-003637
STATE FARM FIRE AND CASUALTY
COMPANY

14th Judicial District Court
State of Louisiana
Parish of Calcasieu

FILED SEP 1 6 2022

Deputy Clerk of Court
Calcasieu Parish, Louisiana

THE STATE OF LOUISIANA
TO:   STATE FARM FIRE AND
CASUALTY COMPANY
THROUGH LOUISIANA
SECRETARY OF STATE
8585 ARCHIVES AVENUE
BATON ROUGE, LA 70809

made service upon the named party through the Office of the Secretary of State on

SEP 0 9 2022

by tendering a copy of this document to:

JULIE NESBITT

DY. M. LOCKLEY
Deputy Sheriff, Parish of East Carroll, LA

Parish of East Carroll

You are named as defendant in the above captioned matter. Attached to this citation is a:

PETITION FOR BREACH OF CONTRACT ET AL

***ALSO SERVED WITH ATTACHED CERTIFIED COPIES OF: "SECOND AMENDED CASE MANAGEMENT ORDER REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANES LAURA AND DELTA" and "INTERIM PROTECTIVE ORDER".

You must either comply with the demand contained in the petition of TODD JOHNSON, or make an appearance either by filing an answer or pleading in the 14th Judicial District Court located at 1000 Ryan St., Lake Charles, LA within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

Article 1001 of the Louisiana Code of Civil Procedure states:
C.   A Defendant shall file his answer within **twenty-one (21)** days after service of Citation upon him, except as otherwise provided by law.

If the plaintiff files and serves a Discovery Request with his Petition, the Defendant shall file his answer to the petition within **thirty (30)** days after service of citation and service of discovery request.

D.   When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within **fifteen (15) days** after the exception is overruled or referred to the merits, or **fifteen (15) days** after service of the Amended Petition.

C. The Court may grant additional time for answering.

**Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:**

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or within **ten (10)** days after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

**THE CLERK OF COURT'S STAFF CANNOT PROVIDE LEGAL ADVICE.**

Witness the Honorable Judges of said Court, at Lake Charles, Louisiana, this 11th day of August 2022.

Issued and delivered September 1, 2022.

SCANNED

SEP 2 0 2022   Becky Kaliszeski

Becky Kaliszeski
Deputy Clerk of Court

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SERVICE INFORMATION

Received on the _____ day of _____ 20___, and on the _____ day of _____ 20___, served the above named party as follows:



Filing Date: 09/01/2022 09:17 AM   Page Count: 2
Case Number: 2022-003637
Document Name: 1604-H Citation for Petition - Hurricane

[ Original Copy ]
CMS1604

PERSONAL SERVICE on the party herein named _____

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile
in the parish in the hands of _____, a person apparently over the age of seventeen years,
living and residing in said domicile and whose name and other facts connected with this service, I learned by
interrogating the said person, said party herein being absent from his residence at the time of said service.
RETURNED:
PARISH OF _____ this _____ day of _____ 20____

SERVICE       $_____          BY:   _____
                                         Deputy Sheriff
MILEAGE       $_____

TOTAL $_____

Party No.    P001

Notice of Service



TODD JOHNSON
VS.    2022-003637
STATE FARM FIRE AND CASUALTY
COMPANY

14<sup>th</sup> Judicial District Court
State of Louisiana
Parish of Calcasieu

TO:  PAUL J COX
*COX, COX, FILO, CAMEL & WILSON
*723 BROAD ST.
Lake Charles, LA  70601-0000

Service issued to: STATE FARM FIRE AND CASUALTY CO / SOS

Date of Service:  09/09/2022

Number of Service:  1

Personal/Domiciliary:  PERSONAL SERVICE

Pleading served:    1604H CITATION FOR PETITION - HURRICANE

Issued by the Clerk of Court on the 16th day of September 2022.

*Tricia Bobbitt*

Tricia Bobbitt
Deputy Clerk